This case involves apparently something which isn't either run-of-the-line or around the mill because I think it's an issue of first impression in this court's published precedent. That is the issue of the plaintiff's ability to perform a semi-skilled job. The vocational expert in this case testified that there is one and only one job which this plaintiff could possibly perform, and that is the job of telemarketer, that the vocational expert expressly stated twice that this is a semi-skilled job. However, she then went on to state that this semi-skilled job doesn't actually require skills to obtain the job because employers routinely hire untrained people and then train them on the job. Now, that is a critical distinction. She didn't say that the job was unskilled. She simply said that employers hire unskilled people and then train them on the job. In the commissioner's binding Social Security rulings, namely 8310 and 8241, it is specified that at step five of the sequential analysis, an ALJ cannot consider a claimant's ability to perform semi-skilled or skilled work unless that claimant has transferable skills or recently completed education. Well, there's no recently completed education here, and the ALJ expressly found that the claimant doesn't have transferable skills. Therefore, under the rulings, she's limited to unskilled work, and it doesn't matter what the hiring practices of employers are. I thought there was an issue that that ruling that you're citing, by its terms or by other precedent, is not applicable to this case because it goes into it was effective as of a certain date. Is that right or wrong? That is not correct, Your Honor. Social Security rulings, the first two digits indicate the year they were promulgated. 8310 was promulgated in 1983. 8241 was promulgated in 1982. I think he was thinking of 004P, I think, is the one that came into effect later. As Judge Graber correctly points out, there is a third Social Security ruling at issue here, and that is 004P. It doesn't change the analysis. And what 004P does is simply restate the rule that this Court had already stated, in the case Johnson. I'm not sure where I cited Johnson in my briefs. I don't appear to have. It's a case from, I would say, 97, 98, 99. It's from 95, Johnson v. Shalala. Is that the one you're thinking of? I think you're absolutely correct, Your Honor. In that case, this Court held that an ALJ may rely on vocational testimony which deviates from the DOT, so long as the vocational expert provides persuasive evidence in support of the deviation. But here, we don't have a deviation from the DOT. The vocational expert testified twice that this is a semi-skilled job. I thought the vocational expert also said that, maybe not in these verbatim words, but essentially, even though it's listed that way, in fact, it doesn't require skill, not only in its hiring, but in its performance. This is a critical issue, and that is something which I discuss on. . . Well, is that what the V.E. said, or not, in your view? The V.E. said that you don't have to have skills to get the job. I thought the V.E. went further than that, though. Well, it's interesting here. The vocational expert acknowledged that telemarketing is a semi-skilled job. Now, that's in Transcript 215. She asserted that previous work experience is not required to obtain the job, and that's at 216. However, there's a difference between previous work experience being required to obtain the job versus the job being semi-skilled. Now, she said it's semi-skilled, just like the DOT says it is. And didn't she also say, though, that in actual practice, it can be performed without transferable skills at an unskilled level, in essence? Well, I'll read it. And ALJ is saying, okay, what did you say, it's unskilled, or the vocational expert answered, it is an SVP of three, that's semi-skilled, which by classification is semi-skilled. But in my many years of research in placing individuals, I have not encountered one instance where previous work experience makes any difference whatsoever or is required. And so what she's saying is, yes, I acknowledge it is semi-skilled, but employers train people on the job. So what's wrong with that? Why isn't that persuasive evidence? Well, she's not deviating from the DOT. She's saying, yes, this is a semi-skilled job, just like the DOT says. However, what she's saying is that employers in actual practice train people on the job. She seems to be saying in substance that you don't need a semi-skilled while you're doing it, but you don't need a skill to get the job because you're trained. So it seems to me in substance it's like a deviation. It is a legal deviation. They give telemarketers scripts to read and each company has their own program. It is a legal deviation. The vocational expert is saying, I don't like Social Security ruling 8310. I don't like 8241, which say that the agency can't consider semi-skilled jobs. I'm telling you, Mr. ALJ, that you should ignore the binding rulings of the agency and find that this woman can perform a semi-skilled job because it's the hiring practice of employers to train people on the job. Now, that's what the vocational expert said, but the agency's rulings expressly state that the agency cannot consider the hiring practice of an employer. That's page three of my reply brief, 404-1566-C3. And so we've got a job which the VE says is semi-skilled, and she says that the ALJ should just ignore that. Now, let me ask you this. Maybe this is an important question, but is it your contention she can't do that job? Absolutely. And why can't she do it? Because the agency's binding rulings specify that she can't. That's a legal answer. What about a factual answer? What is it in her characteristics or her medical condition that stops her from doing this job that the VE says she would be trained to do? The other 30 pages of my briefs where I argued that the ALJ had improperly rejected her testimony regarding her symptoms, the doctor's testimony, and the lay witness testimony. That's still not really a full answer. What is it about the telemarketer position as it actually exists in the world that she cannot do? She testified that she has a very limited capacity for sitting. She has a very limited capacity for standing. She requires naps during the day, during which time she lies down, because sitting and standing in alternation are so taxing upon her that she can't sustain that activity over the course of a full day. And she has other symptoms. She has chronic fatigue, which is one of the things here. She also has fibromyalgia, which causes severe pain, which interferes with her ability to concentrate, makes her grouchy. One of the items in the vocational testimony was that she, the lay witness testimony was that she was grouchy, and the vocational expert addressed that grouchiness and said that it would preclude this job. And so the evidence as a whole, whether or not you buy the semi-skilled being precluded, the evidence as a whole establishes that her credible limitations prevent her from performing this job, even if the agency could ignore its own rulings and rely on the hiring practices of employers, which they can't do because under 404.1566C3, it expressly states that the hiring practices of employers may not be considered. Thank you, counsel. You've exceeded your time, but we'll give you a minute for rebuttal since we asked a lot of questions. Mr. Ellsbury? Good morning, Your Honors. Tom Ellsbury, the commissioner. I do believe this is not an issue of first impression, but it is an issue of deviation. The vocational experts' deviation from the DOT. I would like to clarify based on some of your questions to counsel. I think there are some issues that need to be clarified. One, vocational experts never testified about hiring practices and never testified that she could perform this job after training. There was no issue. There was no discussion of hiring and then training. This is counsel's argument and not a part of the record. I believe you were addressing SSR004P regarding the timeliness of the regulation when it was passed, which was actually in December, December 4th of 2000, and this decision came out December 21st, 2000. So that regulation wasn't in effect. That regulation, along with Johnson's. When was the hearing, though? That hearing was the hearing itself. There were two hearings. Were they before or after December 4th? Because I felt the timing of the regulation depended on the date of the hearing rather than the date of the decision. The hearing itself was September 12th, 2000, so it was shortly after that that the SSR came out. But I believe that the 004P just clarifies the ruling in Johnson v. a presumption and a presumption that it is rebuttable by vocational expert testimony. And that's what we have here. And 004P then goes on to clarify that one reason for a vocational expert's clarification or one basis for their clarification is when their experience in job placement and career counseling differs from that of the DOT. Here she stated, and I think her quote in full is particularly important here. First she stated, in many years of research in placing individuals, I have not encountered one instance where previous work experience makes any difference whatsoever or is required. The ALJ questioned her further because she had earlier stated that the DOT defines the classification as SBP3, which is semi-skilled. She never stated that it was equal to that level. She stated that the DOT classified it that way. When asked to clarify it by the ALJ, she stated, without exception, an individual should be able to step into this job without any previous experience or skills obtained from other jobs. She says she can step into it, doesn't address training, and clearly states there are no skills or experience necessary. The point in the record cited by Appellant's Counsel where she refers to the skill classification, she is discussing the DOT's classification of that job. At TR, transcript page 409 or excerpt 207, the ALJ asks her what references she uses for her decision or for her analysis. She specifically states it's the DOT. But when we get into the discussion regarding the skills of telemarketer, first she designates the DOT classifies it as semi-skilled, but her personal experience in career placement and career counseling differs from the DOT. Appellant's Counsel also argues that the issue of hiring practices. This is not a hiring practice. Particularly it's not a hiring practice as defined under 1566C3. Appellant's Counsel's reply brief stated that the Commissioner is precluded from considering hiring practices whether or not they can perform in determining whether or not they are stable, and that's incorrect. The Commissioner does not consider hiring practices in determining disability, not ability. The way this comes into play, let me present a hypothetical. We first examine, as it pertains to the Social Security Act, your RFC, residual functional capacity, along with your vocational capabilities at step five when considering other work. What we will not consider in regards to hiring practices is, well, let me give you the hypothetical. We find that a claimant has the RFC and the vocational capabilities to perform the job of security guard. The hiring practices require the security guard to be bonded. This claimant cannot be bonded. We cannot find a claimant disabled because they're unable to perform security guard because they can't be bonded. We only consider residual functional capacity along with vocational capabilities. To use Appellant's Counsel's argument, we would have to say when the hypothetical security guard can be bonded, we can't use this to determine that you're able to perform the security guard job because we can't consider hiring practices. That's not a logical extension of that regulation. And I guess hiring practices, as I reiterate, is not an issue that the vocational expert brought up. It's only a legal argument brought after the fact. The Appellant's Counsel bases his argument upon supposed testimony that the vocational expert found the job semi-skilled. She did not. She specifically found it to be unskilled. She doesn't state the magic words, I find this job unskilled. But her description is clearly sufficient to meet that definition. She's not required to, I think that's asking a bit much in the context of the hearings, to go beyond the actual description she did. In fact, I believe the record shows the ALJ questioned her at length to demonstrate or to clarify what the skilled requirements were as she defined the job. The other argument that was raised was that she stated you can come in at entry level and then be trained. She never talks about that. All she says is come in, step into this job, you can commence the job. No issue regarding training. And that's all I have in regard. I guess I would like to quote 004P, even though it wasn't in effect at the time of the hearing. I believe it's still. I don't understand how you take that position. At the end of the effective date says that the clarified standards stated in this ruling, and I'm going to leave out some things, applies on the effective date of the ruling to all claims for disability benefits in which a hearing before an ALJ has not yet been held or that is pending a hearing on remand. So why would it apply in a case where the hearing was held two months earlier and they're in the process of writing up the decision? I believe it would apply because I believe it's a clarification of an existing standard. Well, as was enunciated in Johnson v. Shalala, regarding the rebuttable assumption aspect of the DOT and vocational experts testimony. And so while it may not be strictly enforced, and I would think that in some cases the commissioner would like to argue that, we weren't held by it under those circumstances. But I do believe that it's instructive of the intent of the agency in fulfilling its responsibility to fairly and accurately weigh the evidence and to take complex issues regarding vocational abilities and skills and weigh those. So while it's not presidential in the sense that it was not effective at the date of the hearing, I do believe it is instructive to the intent of the commissioner. Do I understand you're saying that the commissioner satisfies and views the V.E. testimony as satisfying Johnson v. Shalala? Yes. Because the V.E. gave experience based on the V.E.'s counseling experience and so on. You said that this poses a different view than the listing. Yes. That there's persuasive evidence supporting it. Exactly. It's the rebuttal to the presumption of the L.D. So at the very least, it's going to afford Johnson v. Shalala. Well, it seems like it's the same analysis, whether you say the ruling applies and it really is sort of codifies Johnson or whether we say the ruling is not in effect yet. So therefore, we look at Johnson predated. So I don't see I'm not getting a substantial difference there. Nor do I believe there's one. I believe Johnson would support opposition, and I guess I refer to SSR as 004P because I believe it solidifies our intent to follow Johnson v. Shalala, as well as our statutory obligation to fairly accurately develop protections. Thank you, Counselor. Your time has expired, Mr. Wilborn. You may have a minute. Thank you. I agree with Mr. Ellsbury that 004P is instructive because in 004P, it expressly states that it simply clarifies existing policy. And so what we've come back to in applying 004P is footnote six on page 22 of my opening brief. And it says, I've actually paraphrased some things here, but paraphrasing 004P, a vocational expert evidence may not be relied on to establish that semi-skilled work does not involve complex duties that do not take more than one month to learn because that is inconsistent with the regulatory definition of semi-skilled work. Nowhere in that transcript does the vocational expert specify that this is not a semi-skilled job. She says you can step into it, or you can step into a lot of semi-skilled jobs without previous experience. Thank you, Counsel. The case just argued is submitted.
judges: Hall, Graber, Gould